on behalf of Heidi Haischer, the appellant. The only real issue at trial in this case was whether or not Heidi Haischer knew what was contained in the documents that had been prepared by Kelly Nunez. And the issue came down to, in the closing arguments, if she did not read the documents, which she testified to, because she came in and she admitted, shown the documents by the prosecutor, are there misrepresentations in these documents? And she said yes. She admitted that the misrepresentations were in the documents, but her defense, her entire defense was, I didn't know that when I signed them. Both of the major issues in this appeal, both the issue of Heidi's intellectual limitations as well as the evidence issue with regard to excluding the evidence of domestic violence, go to whether or not, if Heidi did not read the documents, why she didn't read the documents. When a trial court decides to give, at the urging of the prosecutor, a willful blindness or deliberate ignorance instruction, which it did in this case, because apparently the — Did you object to that, Julie? There was an objection to the instruction, yes. And the objection was that there is no evidence that she deliberately took some act to avoid having knowledge. That objection was overruled. The instruction was given. We have not raised on appeal the issue of the giving or not giving of the instruction. That's not the issue here. The issue here is when the prosecution thinks that it may have difficulty proving that Heidi knew what was in the documents and they ask for a deliberate ignorance or willful blindness instruction, then they cannot also come along and say, but we're not going to let the jury hear anything with regard to either mental or physical abuse. I'm a little confused by the government's argument in their brief that somehow the jury was permitted to consider mental abuse, when that is precisely what they argued to the court should not be considered by the jury. The quote that I have in my reply brief from the prosecutor is, abuse is abuse. It's both physical and it's mental, and neither should be considered by the jury. But you did abandon the coercion defense, right? The trial lawyer did — well, yes. The trial lawyer stood up in a deferred opening statement and said, this is not a duress defense. Now, it's — I'm not sure why he did that. I'm not sure why he went through the evidentiary hearing prior to trial without telling the court that he never intended to raise a duress defense. A duress defense is very different, and I think there was some confusion about that. In a duress defense, the defendant has to come in and say, I knew. She would have had to come in and testify. I knew there were misrepresentations, but the reason I signed the documents was because he forced me to do it. That was not the defense in this case. She said, I didn't know. I didn't read the documents. But the jury did not get to hear that there was a violent history between these two. The judge told the trial counsel, well, you can argue that he was controlling. Because of instruction number 20, I suspect the jury probably thought that that lawyer was disregarding the judge's instruction. When he argued controlling, even, because of the nature of telling the jury, you can't consider any testimony of alleged abuse. And in this case, we know it's of any kind because the trial lawyer tried to limit it to physical abuse, even though I think that still would have been error. And so what the jury didn't hear was precisely what the protections in this whole confusing area of deliberate ignorance and willful blindness. And as this Court knows, it's been the subject of a lot of confusion with at both the trial level and the appellate level. And Heredia, the Ambach decision in Heredia, said, well, we're not going to require motive that you didn't look at it because you wanted to give yourself a defense. So they cleared that confusion up in the case law and told the dissent and the concurring judges that, but we don't need to worry about this being used in an improper fashion, because of course you can come in and talk about deliberateness by talking about a coercive environment, very different kind of defense. And that's why it got raised so many times by the trial lawyer. Please, Judge, let me put this in. Let the jury understand what was going on when she was – when the papers were stuck in front of her and she signed them. Please let me let the jury know this, because that will give context to the term deliberate. The issue of deliberate – deliberate – the deliberateness of her conduct also comes up with regard to the motion for new trial. In the motion for new trial, although, as I pointed out, her trial counsel, Heidi's trial counsel, made some remarks about her as not someone qualified to work at NASA, not a very smart girl, those kind of things. What the jury did not know was that Heidi suffered from – from intellectual limitations that, when combined with the jury not knowing about the abuse which was rendered on her by Kelly Nunez, would have helped to explain some of the things that were represented by – by the prosecution. What was the trial lawyer's excuse or reason for not, you know, being able to adduce that evidence earlier? He – what he – he didn't – he didn't testify as to a reason. There really wasn't one, was there? There probably wasn't a good reason for him doing that under the circumstances. However, I don't know – let me – the – I'll try to confine myself to the record, and there was some record in the – in the motion for new trial of an entry hearing with regard to this, is that her limitations were not so severe. And Heidi took – took somebody with her almost everywhere she went. She had come up with what – with what a lot of people who do have intellectual limitations do, some coping mechanisms. One of them was that, for instance, there's a deposition that was – that was introduced in evidence with regard to – in – in – in a method to try to impeach her. But she had Kelly Nunez sitting next to her in the deposition. Her trial – her lawyer in the civil case that the deposition was drawn from said that Nunez had threatened her throughout that process. So Heidi had developed some things when she goes to the lawyer's office when – where she's always got someone with her. I – when I – I got the case before sentencing, it was apparent to me that there were – that there were some limitations here. And so that's why the testing occurred. The – the – and I guess my – what I'm saying is, is that it's the combination of those two circumstances which must be determined – if you – if the term deliberate in and of itself is a psychological term. So the evidence of the abuse and whether or not she had the real options at that point in that context, it was important for the jury to hear that. And when the – when instruction number – when instruction number 20 was given to the jury, the jury really didn't – didn't have anything left in front of it that it could – that it – of that evidence that it could determine. And any evidence that was adduced, they were told that they must ignore it. So I think it – under those circumstances, there's – there's really no question that there was – there was prejudice to her. It's not often that an instruction of this kind will be – goes so centrally to the core of her defense. There really was no other issue. There was no other issue to be decided in this case in terms of whether or not Heidi had knowledge of what was in those documents. There is one other issue that – that I'd ask the Court to consider. I'll submit on the – on the issue of the third issue. The other issue that I would like to have the Court look at is the – is the issue of the – or the restitution. For some reason, at this very volatile time of – of mortgages, Deutsche Bank was unable to come up with any document that would refute what its representative said at trial. The – it's – Deutsche Bank's representative at trial said, we have not repurchased that mortgage. And yet – and all they could come up with was an affidavit that said, based upon my review of the documents and based upon our general business practices at the time, I'm telling you that we own this note. This – this mortgage and this restitution will follow, if the conviction stands, will follow Heidi probably for the rest of her life. I think that in light of Deutsche Bank's history, in light of some of the evidence that we've used with regard to their previous representations, that they should be required to do more before such a judgment goes into place. I'll reserve the remainder of my time for review. Thank you. Good morning. May it please the Court. My name is John Alex Romano. I represent the United States as appellee. The district court did not abuse its discretion in excluding evidence that Kelly Nunez allegedly abused Defendant Haysher once Ms. Haysher abandoned her duress defense in midway through trial. I'm sorry. It did not abuse its discretion in excluding evidence of what? Of that Mr. Nunez abused Defendant Haysher. That ruling was made midway through trial after the defense of duress was abandoned by counsel during his reserved opening argument. And with the Court's permission, I'd like to begin by addressing. But doesn't it still go to state of mind? Isn't it relevant to state of mind, that evidence? Your Honor, I think once duress is off the table, the evidence loses a lot of its probative value. A lot of it, but not all of it. Perhaps not all of it. And I think it's important to distinguish two types of coercion. There's the coercion in the duress context, where the defense is, you know, I knew what I was doing, but I was forced to do it. That's the duress defense and the coercion there. The coercion in the case that the defense is proffering here is coercion as to deliberate ignorance, that Mr. Nunez allegedly prevented Ms. Haysher from reading the documents that she was initialing. She initialed every page, but he prevented her from reading it. And I think the evidence that was the main evidence of physical abuse that was proffered was this January 4th incident, January 3rd and January 4th, where Mr. Nunez allegedly breaks Ms. Haysher's leg, I believe it was on the 3rd. And the next day on the 4th, Penny Haysher testifies that she comes over to the house. Mr. Nunez is standing over Defendant Haysher, yelling at her to sign the documents as Ms. Haysher is crying. That's really evidence of he made me do it. And as it turns out, she had a broken leg. And as it turns out he wouldn't let her go to the hospital unless she signed. And that's my point, Your Honor. That is more, that evidence is more of coercion of making her sign the documents. Now, the defense could make the argument that in light of that, he was also not letting her read whatever was on those documents. But it's slightly different. But I don't understand how you could get a dual deliberate ignorance instruction in that context and still prevent this other testimony from coming in. Your Honor, I think it was pretty one-sided. I think it was highly prejudicial. And I think it's also important to understand, because we certainly disagree with the argument. I disagree with the argument that my colleague, Ms. Forsman, is making as to what evidence was excluded and whether the jury would have been confused. So I think it's important, first, to take account of what evidence actually came in, because when the district court made that ruling midway through trial excluding evidence, it expressed the rule that Ms. Haysher could present evidence concerning the dynamics of her relationship with Mr. Nunez, who was the stronger of the two, who was the decision-maker. And in fact, the defense went on to enlist that during their case they called several witnesses who testified that Mr. Nunez was controlling, that he was irrational, that Ms. Haysher seemed scared of him, that she was sometimes shaken in his presence, that he was physically imposing. They even called Mr. Nunez to the stand, really for the purpose of showing the jury how big a person Mr. Nunez was. And they elicited testimony concerning that January 4th incident where Mr. Nunez is standing over Ms. Haysher, yelling at her to sign the document. So all that evidence came in. And I don't agree that the instruction that's given at the end of the case instructing the jury to disregard any testimony concerning alleged abuse. I believe it's Ms. Forsman's instruction 20. I believe that's correct. I don't think the jury would have been confused on thought in light of that instruction. It can't consider all this other testimony that had come in. Some testimony concerning physical abuse had seeped in during the trial, notwithstanding the Court's ruling. So I think the jury would have understood that instruction to be referring to the physical abuse evidence, because certainly defense counsel goes on to argue during the closing. The Court tells him, as she overrules the objection, the district judge told defense counsel that he could argue that Nunez was controlling, that Haysher was scared of him and has deferred to him. And he went on to make an argument along those lines. For example, at page 116 of the supplemental or the excerpts of records, he's – he refers to that January 4th incident of Nunez telling Haysher to sign the documents. He argues that Mr. Nunez is controlling. So I think the jury – I don't think the jury would have been confused. I think the district court worded the instruction as it is because the judge was concerned that using the word abuse is highly prejudicial. And I think this – that goes to the Rule 403 balancing as to the exclusion of the physical abuse evidence and why it was proper. The natural tendency of evidence concerning domestic violence is to elicit sympathy for the victim. So admitting this evidence of physical abuse ran the risk that the jury might find that Ms. Haysher knew about the fraud, but it might acquit her anyway just out of sympathy for what she allegedly suffered at the hands of Mr. Nunez. And related to that – Would you put this in temporal context for me? Because there was one set of loans before the abuse incident. Yes, Your Honor. And then there's an abuse incident, and then there's another set of loans. Well, yes. The abuse incident – there are two properties. The Canteel Circle property closes first, and the L.J. Court property closes second. The abuse incident occurs on January 4th, and the defense's contention is that it was in connection with the documents for that first property, the Canteel Circle property. Well, the government's evidence was that she – Ms. Haysher had signed a version of that loan application at least almost three weeks before on December 16th of 2006. So that sort of raises a question as to what the connection actually was between the abuse and the fraud in this case. And I think that reduces some of the probative value of the physical abuse evidence. And certainly, if the physical abuse evidence had come in – this goes to another 403 factor, the district court found that of unnecessary delay – the government may not have wanted to challenge the medical report saying she broke her leg, but the government certainly would have cross-examined Ms. Haysher, I think, or, you know, it's likely that we would have explored the nature of her relationship with Nunez-Moore on cross-examination if that highly prejudicial physical abuse evidence had come in. So I think the district court, which, you know, was, you know, front line on this and hearing the evidence come in, got it right in striking the balance in favor of exclusion in light of the highly prejudicial nature of the evidence, the evidence that she did allow in concerning the controlling nature of Mr. Nunez, and the risk of some delay on collateral – some delay to the trial on what was a collateral issue. We disagree with the defense's contention that when a district court excludes defense evidence that it has less discretion under Rule 403. There are cases by this Court, the Hankson case, Espinoza-Baza, which we've cited in our case, where this court has excluded defense evidence and the court has recognized the discretion that a district court has on Rule 403 matters. The evidence, the sister's testimony with regard to Nunez screaming at her to sign the documents and so forth, was that part of the evidence presented to the jury? Yes, it was, Your Honor. The portion where she would have testified that she afterward took Defendant Haysher to the hospital was not before the jury, but the testimony that she saw Nunez standing over Haysher yelling her to sign the documents was before the jury. And again, it was referred to by defense counsel and is close. Turning to the second issue raised by my colleague, that of the newly discovered evidence, here again the district court did not abuse its discretion in denying a request for a new trial based on newly proffered evidence concerning the alleged cognitive deficiencies of Defendant Haysher. The district court found that the request for a new trial failed to satisfy three separate requirements under Rule 33 for a new trial. It was the evidence was cumulative, defense counsel failed to act diligently, and the evidence probably would not have produced an acquittal at a new trial. And I'd just like to focus on the lack of diligence, because I understand my colleague, Ms. Forsman, to effectively be conceding that there was no reason why this testing couldn't have been done before trial, given the defense that was argued to the jury, that is that Defendant Haysher was not particularly intelligent, therefore she didn't understand the fraud, and therefore deferred to Mr. Nunez. Well, I assume we're on direct appeal here, so there hasn't been, at least in examination terms or deposition terms, any testimony by trial counsel as to why judgments were made. That's correct. So we're kind of in a vacuum. I mean, I scratch my head and wonder, gee, why did the duress defense go away here? For now, all we know is that it did. And I would just say on that, Your Honor, he does say in the record on excerpt of the record, I think it's 44, and I think he says this during a sidebar, that he doesn't think that the defense of duress is particularly good. That is in the record. I believe it's at page 44 of the excerpt of records. But as to why the testing wasn't done, Your Honor, is screwed. We just don't know. We don't know. But we also do have some evidence from the evidentiary hearing on the second new trial motion. And Dr. Consora, the neuropsychologist, does testify, I believe it's at page 339 of the excerpts of records, that most people, when they interact with Defendant Haysher, detect that she has some difficulty understanding certain things. And certainly, Ms. Forsman contacted, and this is in the record. We discussed it in a brief, that Dr. Consora testified that Ms. Forsman contacted him about doing the testing in March. Ms. Forsman entered her appearance in this case in the district court in February. So within about a month, she contacts Dr. Consora. And I did understand her to concede that she was sort of readily apparent to her. So we think that the lack of diligence is clear in the record. But this is also the same type of evidence that was elicited from other defense witnesses. Sean Claggett, Ms. Haysher's attorney in the civil case, testified that she's not very smart. She was not sophisticated. The defense elicited testimony from witnesses that Ms. Haysher didn't know how to use a computer. So this is the same type of evidence that's in the Consora report. It was cumulative. And as the final prong, we don't – we do not believe that Ms. Haysher's satisfied probations show that the evidence would probably produce an acquittal. There was a lot of evidence before the jury indicating that Ms. Haysher is a functioning, self-sufficient adult. She graduated from high school. She had – was gainfully employed her entire adult life. She had obtained a prior mortgage loan. She maintained good credit by paying her bills on time. And she also had a financial incentive here. She profited from the closings on the two properties. And these were supposed to be used as investments for her. So we don't think that Ms. Haysher carried her burden of showing that the new evidence would probably produce an acquittal. And finally, as to restitution, here again the district court committed no error in ordering that restitution be paid in the amount of the second Elche Court loan. The main question, as the Court knows, is whether or not the lender, Mortgaget, still owned this second loan. And the district court was well within its rights to rely on two affidavits by John He had reviewed documents and connections to the loan. And he twice affirmed that Mortgaget never sold or securitized a loan. And he did more than that. He explained what happened. He explained that once the underlying property was sold in foreclosure and once Ms. Haysher entered into bankruptcy proceedings and the debt was discharged, at that point the loan – the debt was written off and Mortgaget was no longer collecting on it. And I think the district court, which was attuned to the issue, attuned to the disagreement at sentencing, the district judge, she deferred ruling on it until she got a subsequent affidavit from Mortgaget. I don't think it was clear error for the district judge to find that Mortgaget never sold the loan. And we would urge the Court to affirm the order of restitution as well as the convictions in this case. Unless this Court has no further questions, I'm prepared to submit on the government's brief. Thank you. Thank you. Well, I'll accept the lawyer comment, but I need to tell the Court that I'm a social work major, undergrad. I worked for a school for retarded children as one of my first jobs out of social work school. So there is a reason why I saw something there and why she got tested after the trial. The – I think that the – let me read you the instruction to the jury. It's instruction number 20. I instruct you to disregard any testimony of alleged abuse of the defendant by Kelly Nunez. The trial lawyer asked that the Court limit that to physical abuse. The Court said, no, I'm not going to limit that to physical abuse. So we can't look into the jury's mind in terms of what they considered and what they didn't consider. The fact that – that counsel may have argued something in closing argument should not be a consideration, because the jury was directly told to disregard any testimony of alleged abuse in making their determination with regard to whether or not Heidi knew. The problem – this is – this is when the duress defense was abandoned. The important thing about the duress defense is that it's affirmative defense, but it also means that the defendant knew what she was doing, but she was forced to do it. And Heidi Heischer testified that she did not know. And so the duress defense was not available to her as long as she insisted on saying that she did not know. And the jury then was told to disregard any of the things that they heard from these other witnesses. You can't consider any of that in determining whether or not Heidi was – was guilty. You can't isolate a broken leg. You can't isolate one incidence of a broken leg and say, oh, well, that's the only time. She was a – What's your – what's your response to Mr. Romanos? I think you're making this point that, well, this broken leg incident didn't happen until after all the papers for the first ruling were already signed. So I assume the inference is it doesn't affect your state of mind when she signed the earlier papers. Well, because Heidi – this ruling was made before Heidi testified, you don't have in the record what she would have testified. You don't start with a broken leg, I'll tell you that. I haven't worked with enough battered women. You don't start with a broken leg. You start with other kinds of mental and physical abuse. Sean, the lawyer in the civil case, testified to Heidi's fear of him. And so you don't start – and the first thing that happens is he breaks her leg and then stands over the mortgage. There was a – there was – there obviously would have – if she had been permitted to testify, there would have been a lot more evidence in this record with regard to the course of that relationship. Can I ask you just a clarification on the scope of the evidence? Because the brief focuses on basically the 401, 402 and the exclusion, but you just now referenced the jury instruction. But the jury instruction is not challenged in the brief. Am I correct, or did I miss that? Oh, yeah. Well, it's not challenged in the brief, no. It's the giving of the – I mean, that's the whole issue. Right. But the exclusion – the jury instruction ends up saying you can't look at evidence of abuse, and supposedly the other evident – the other evidentiary instruction was related to physical abuse. Is that right? Because, you know, they were able to testify about yelling and all the other things. So it's unclear to me how the jury instruction, which isn't specifically listed as an error, fits in with your evidentiary objection. The jury instruction – there wasn't another jury instruction. In other words, there's not two jury instructions we're talking about. We're just talking about this one jury instruction. And this jury instruction was like an evidentiary ruling, but included in the jury instructions itself. And it was challenged at trial. We have not raised it as a separate issue, but it certainly is part of this issue, because what it did was it scooped up all of the evidence. You can't – the jury was instructed to disregard any evidence of abuse. But that's not what the district judge told counsel. Right. And the door was left open for domination evidence. Much of that evidence was submitted. It may be that the instruction is overbroad, but there's not a separate objection to the instruction as such. So I'm not sure that I can work backwards and say that the instruction reflected the evidentiary rulings of the court, because much of that evidence did get in, was heard by the jury. It was heard by the jury, and then they were told to disregard it. Well, but that's an objection to the objection, or rather to the instruction. And we don't have that before us in so many words. We have an objection to the evidentiary ruling, a constitutional objection to the inability to present that part of the defense. I think we presented the issue the way we did because the instruction is so much a part of the evidentiary ruling. I think the instruction itself simply reflects the court's evidentiary ruling. But it goes further, and it tells the jury, I ruled this way, and I'm telling you I ruled this way. So I think it's a part of the evidence. Well, your position is that it just reinforces the evidentiary ruling, right? Correct. It was completely connected with the evidence. It's a part and parcel of the evidentiary ruling. All right. Thank you. Thank you, Your Honor. I'd like to thank both of you for your arguments, very helpful this morning. The case of the United States v. Haysher is submitted, and we're adjourned for the morning.
judges: TASHIMA, McKEOWN, CLIFTON